# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CP-00008-COA

**MANCEL L. RENCHER A/K/A MANCEL LOGAN RENCHER**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

DATE OF JUDGMENT:               12/04/2023
TRIAL JUDGE:                    HON. MICHAEL PAUL MILLS JR.
COURT FROM WHICH APPEALED:      ALCORN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         MANCEL L. RENCHER (PRO SE)
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: ASHLEY LAUREN SULSER
NATURE OF THE CASE:             CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                    AFFIRMED - 01/07/2025
MOTION FOR REHEARING FILED:

## BEFORE CARLTON, P.J., WESTBROOKS AND LAWRENCE, JJ.

## WESTBROOKS, J., FOR THE COURT:

¶1. This appeal stems from Mancel Rencher's convictions and sentences in the Alcorn County Circuit Court for aggravated assault and two counts of shooting into a motor vehicle. The circuit court sentenced Rencher to serve twenty years in the custody of the Mississippi Department of Corrections (MDOC) for the assault and to two five-year suspended terms for the shooting, followed by five years of post-release supervision. Rencher filed a post-conviction collateral relief (PCR) motion in the circuit court, which was ultimately denied. Rencher now appeals the denial of his PCR motion. After a review of the record, we affirm the circuit court's decision.

## FACTS AND PROCEDURAL HISTORY

¶2.    In March 2020, Rencher was living in a house with his girlfriend Alexa Nelson, his children, and two of his friends, Angie McGaha and Casey Sanders. On March 12, 2020, McGaha approached Rencher and told Rencher that she needed a ride away from the house because she was scared of Sanders and that Sanders had held her there against her will. Rencher admitted that during this period of time, he, McGaha, and Sanders were all users of methamphetamine. Rencher agreed to drive McGaha to Walmart to meet her parents. Once they arrived at Walmart, McGaha got in the vehicle with her parents. Even though neither Rencher nor McGaha told Sanders they were leaving the home, Sanders showed up at Walmart after walking there from the home, which was approximately two miles away. As Sanders approached Rencher in the parking lot, Sanders told Rencher, "I'm fixing to f*** you up." Sanders then assaulted Rencher by hitting him in the left temple. Rencher reacted by pulling out a 9 millimeter gun allegedly to defend himself. Rencher shot the gun thirteen times, purportedly "acting in self-defense." Rencher then got in his truck and drove to his parent's home. His mother, who worked at Walmart at this time, contacted law enforcement about the shooting. Rencher then turned himself in to the sheriff's office.

¶3.    At trial, Rencher recounted the story of what happened on March 12, 2020. Rencher testified that he shot Sanders because he was in fear for his life even though Sanders had no weapon at that time. Rencher also asked for leniency from the court, stating that he was not the same person he was two years before when the crime occurred. He informed the court he was then an avid church-goer and no longer used drugs.

¶4.    On July 8, 2022, Rencher pled guilty in Alcorn County Circuit Court to aggravated assault, which was a negotiated reduced charge derived from his indicted charge of attempted murder, and two counts of shooting into a motor vehicle.  The circuit court ordered Rencher to serve twenty years for the aggravated assault conviction and two five-year suspended sentences for the shooting-into-a-motor-vehicle convictions.  The court imposed five years of post-release supervision.  When the trial court judge initially informed Rencher of his sentence, the judge misstated the length and terms of the sentence, but the State quickly corrected him.  The judge then correctly informed Rencher of his sentence using the proper terms.

¶5.    Rencher subsequently filed a PCR motion in the circuit court alleging ineffective assistance of counsel, among other issues, and the circuit court denied the motion.  On appeal from that denial, Rencher filed a pro se brief in which he again raises the issue of ineffective assistance of counsel by his trial court attorney and seeks to "vacate and set aside his conviction" or at least receive an evidentiary hearing.

**STANDARD OF REVIEW**

¶6.    "When reviewing a circuit court's denial or dismissal of a PCR motion, we will only disturb the circuit court's decision if it is clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review." *Tingle v. State*, 285 So. 3d 708, 710 (¶8) (Miss. Ct. App. 2019) (quoting *Williams v. State*, 228 So. 3d 844, 846 (¶5) (Miss. Ct. App. 2017)).

## DISCUSSION

¶7. Rencher raises the issue of ineffective assistance of counsel. He asserts many different reasons he believes his trial counsel was ineffective. Rencher believes his trial counsel failed to request a presentence report as part of the sentencing phase, failed to request a speedy trial and challenge the indictment, and failed to offer proper advice and notice to him during plea negotiations.

¶8. "To succeed on an ineffective-assistance-of-counsel claim, [the defendant] must meet both prongs of the test laid out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984)." *Lovett v. State*, 270 So. 3d 133, 135 (¶5) (Miss. Ct. App. 2018). Under the two-part test in *Strickland*, "[f]irst, the defendant must show that counsel's performance was deficient." *Id*. (quoting *Strickland*, 466 U.S. at 687). Second, the defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. (quoting *Strickland*, 466 U.S. at 694). "As applied to the plea process, the focus of the first prong remains the same, while the second prong focuses on whether counsel's unprofessional performance affected the outcome." *McBride v. State*, 108 So. 3d 977, 980 (¶11) (Miss. Ct. App. 2012) (quoting *Hannah v. State*, 943 So. 2d 20, 24 (¶6) (Miss. 2006)).

¶9. Mississippi caselaw holds that "[a] prisoner seeking post-conviction relief must 'allege both prongs of the above test with *specific detail*.'" *Ingram v. State*, 107 So. 3d 1024, 1028 (¶10) (Miss. Ct. App. 2012) (emphasis added) (quoting *Coleman v. State*, 979 So. 2d

731, 735 (¶15) (Miss. Ct. App. 2008)). "The burden is on the defendant to bring forth proof which demonstrates that both prongs of the *Strickland* test are met." *Anderson v. State*, 766 So. 2d 133, 136 (¶10) (Miss. Ct. App. 2000). Additionally, "the claim must be supported by affidavits other than his own." *Cook v. State*, 301 So. 3d 766, 778 (¶36) (Miss. Ct. App. 2020) (quoting *Shavers v. State*, 215 So. 3d 502, 507 (¶14) (Miss. Ct. App. 2016)). "In cases involving post-conviction collateral relief, 'where a party offers only his affidavit, then his ineffective-assistance-of-counsel claim is without merit.'" *Beasley v. State*, 355 So. 3d 245, 205 (¶13) (Miss. Ct. App. 2022) (citing *Mooney v. State*, 130 So. 3d 145, 147 (¶12) (Miss. Ct. App. 2013)), *cert. denied*, 355 So. 3d 774 (Miss. 2023).

¶10.    The first problem with Rencher's PCR motion is that the only affidavit he presented was his own. He failed to provide the trial court with an affidavit submitted by someone other than himself. Mississippi caselaw has consistently held that the petitioner's claims must be supported by affidavits other than his own. *Willis v. State*, 321 So. 3d 584, 591 (¶22) (Miss. Ct. App. 2021) (citing *Webster v. State*, 152 So. 3d 1200, 1203 (¶8) (Miss. Ct. App. 2014)). For this reason, Rencher's claims fail.

¶11.    Further, Rencher merely makes bare assertions. In a PCR motion for ineffective assistance of counsel, the petitioner is "required to plead claims of ineffective assistance with specificity." *Id.* (citing *Webster*, 152 So. 3d at 1203 (¶8)). "Bare allegations are insufficient to prove ineffective assistance of counsel." *Ingram*, 107 So. 3d at 1028 (¶13). Rencher did not set forth specific facts showing his counsel was ineffective, nor did he specifically

5

explain how the alleged "failures" led to his decision to plead guilty. This is also insufficient support for Rencher's claims to be brought before this Court on review.

¶12. In *Willis*, this Court heard a similar argument to the one at hand. In that case, "Willis claim[ed] that he received ineffective assistance of counsel because his attorney (1) did not properly advise him of the consequences of pleading guilty, and (2) did not correct misinformation regarding his sentence." *Willis*, 321 So. 3d at 590-91 (¶21). The Court in *Willis* held that "Willis merely asserts that he received ineffective assistance of counsel. He did not produce any proof, by affidavit or otherwise, to support his claim. For these reasons, the court did not err in dismissing his motion without an evidentiary hearing. Therefore, this issue is without merit." *Id*. at 591 (¶23) (citation omitted).

¶13. The biggest distinguishing factor in that case and the one at hand is that Willis was sentenced to life imprisonment without eligibility for parole. The dissent in *Willis* felt as if Willis did not understand "what the maximum possible sentence (i.e., the only possible sentence) could be, nor did he understand the effect of pleading as a habitual offender." *Id*. at 593 (¶31) (Westbrooks, J., dissenting). The dissent believed that

> had he been told that his habitual status legally mandated the worst possible sentence and that no worse outcome could have resulted at trial, it is highly unlikely that he would have submitted a plea petition in the first place, much less requested that the judge grant it after hearing the misleading statements made at the hearing. Instead, Willis took the deal only because the consequences were not explained to him. Willis did not enter his plea voluntarily or intelligently.

> For the foregoing reasons, I respectfully dissent from the majority and believe this case should be remanded for an evidentiary hearing.

*Id*. at 592-93 (¶¶31-32).

¶14.    In the case sub judice, the circuit court judge similarly incorrectly stated Rencher's sentence at first; however, the judge was immediately corrected by the State.  The circuit court judge then clarified by stating,

> Mr. Rencher, it was the intent of the Court to give you 20 years in custody of the Mississippi Department of Corrections with none of those 20 years being suspended, leaving 20 years to serve.  I apologize for that technicality.
>
> Mr. Rencher, the Court just gave you 20 years to serve followed by ten years of suspended time with regards to Count II and with regards to Count III.
>
> You're going to be ordered to complete five years of post-release supervision.

Rencher does not allege that he entered into the plea involuntarily or unknowingly.  He simply asserts that his counsel failed to request a presentencing report.  However, "[t]his Court must apply a heavy measure of deference to counsel's judgments." *Wiley v. State*, 517 So. 2d 1373, 1379 (Miss. 1987).  This is because "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*.

¶15.    Rencher also alleges that his trial counsel was ineffective by not requesting a speedy trial.  However, "[i]f a defendant voluntarily pleads guilty to an offense, then he waives all nonjurisdictional rights to trial—including the constitutional right to a speedy trial." *Wright v. State*, 270 So. 3d 1145, 1147 (¶11) (Miss. Ct. App. 2018) (citing *Anderson v. State*, 577 So.2d 390, 391-92 (Miss. 1991)).  During the sentencing proceedings, the court asked Rencher, "Do you understand by entering a plea of guilty that you are waiving or giving up

7

any rights you may have to assert that the State of Mississippi has committed a speedy trial violation with regards to your case?" Rencher responded, "Yes, sir." Therefore, Rencher's assertion that his counsel was ineffective by not requesting a speedy trial is without merit because he pled guilty and waived the right to bring this claim.

## CONCLUSION

¶16.    For all of the foregoing reasons, we find Rencher's claim of ineffective assistance of counsel is without merit. Thus, we affirm the circuit court's order denying Rencher's PCR motion.

¶17.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. WILSON, P.J., AND EMFINGER, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WEDDLE AND ST. PÉ, JJ., NOT PARTICIPATING.**